IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EDWARD BARBER,** : | **CIVIL NO. 1:CV-08-1371** |
| Petitioner : | |
| : | **JUDGE SYLVIA H. RAMBO** |
| v. : | |
| **WARDEN JERRY MARTINEZ** : | |
| Respondent : | |

## **M E M O R A N D U M**

Petitioner Edward Barber, an inmate formerly confined at the Schuylkill Federal Prison Camp in Minersville, Pennsylvania ("FCI Schuylkill"), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his due process rights were violated during a disciplinary hearing in which he was found guilty of making, possessing, or using intoxicants. Barber requests that the court expunge his disciplinary record, restore his previous status of minimum custody, and order his placement in "his previous housing status camp." For the reasons that follow, the petition will be denied.

**I.     Background**

**A.     Facts**

Barber arrived at FPC Schuylkill on March 20, 2007. (Doc. 5 at 2.) On July 19, 2007, Officer Craig Patrick discovered a twenty ounce Barq's brand soda bottle containing a light brown liquid in Barber's locker while securing Barber's property. (Doc. 5-2 attach. 4.) Officer Patrick identified the locker as Barber's based on personal papers and receipts located inside the locker. (*Id.*) As a result of

the suspicious contents of the bottle, Officer Patrick conducted an alcohol content test on the liquid using the Alco-Sensor III, a "handheld (pocket sized) breath alcohol testing device designed to read both breath alcohol concentration (BrAC) or estimate blood alcohol concentration (BAC)." (*See id.*; Dfndts. ex. 2 from December 17, 2008 Hearing.)  The Alco-Sensor III, which had been calibrated in accordance with the Operator's Manual on July 2, 2007, showed a positive reading of .091 alcohol concentration for the suspicious brown liquid discovered by Officer Patrick.  (Doc. 5-2 attach 4; *see* Dfndts. ex. 1 from December 17, 2008 Hearing.)

In response to the discovery of a bottle possessing intoxicants, Officer Patrick issued an incident report to Barber for violating Bureau of Prisons ("BOP") disciplinary code 222, which prohibits making, possessing, or using intoxicants. (Doc. 5 at 2.)  Barber received a copy of this incident report on July 19, 2007 at approximately 9:20 p.m.  The report explained that on July 19, 2007 at approximately 10:15 a.m., Officer Patrick discovered a bottle in Barber's locker containing a light brown liquid that tested positive for intoxicants.  (*Id.* at 2–3.)

On July 24, 2007, the Unit Discipline Committee ("UDC") held a hearing on Barber's incident report.  (*Id.* at 3.)  Barber received a "Notice of Discipline Hearing Before the (DHO) Department of Justice" that same day along with an "Inmate Rights at Discipline Hearing" form from the BOP.  (Doc. 5-2 attach. 3.)  Barber expressed his intent not to call witnesses on the "Notice" form and waived his right to a staff representative at the UDC hearing.  (*Id.*)   At the UDC hearing, Barber testified that the bottle contained apple cider vinegar.  (Doc. 5-2 attach. 4.) The DHO did not find Barber's testimony credible and ultimately determined that Barber had violated disciplinary code 222.  (*Id.*)  The DHO based

these findings on the "eye witness account of a staff member," concluding that the "greater weight of the evidence and reporting officer's account" justified holding Barber accountable for violating the code. (*Id.*)  Barber received a disallowance of Good Conduct Time, a sentence of disciplinary segregation, and restrictions on phone, visitation, and commissary privileges for the violation. (*Id.*)

### B.     Procedural History

On July 21, 2008, Barber filed a petition for writ of habeas corpus and supporting memorandum of law, alleging that his due process rights had been violated because the BOP failed to provide adequate notice prior to the hearing and the DHO based his findings on insufficient evidence. (Doc. 1.)  Respondent filed a response to the petition on August 12, 2008. (Doc. 5.)  Barber filed a traverse on August 25, 2008. (Doc. 6.)  On November 7, 2008, the court ordered a hearing to clarify the evidentiary foundation for the DHO's ruling. (Doc. 11.)  The court conducted the hearing on December 17, 2008. (Doc. 16.)  The court is now prepared to consider the merits of the petition.

## II.     Discussion

Barber filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that his due process rights were violated because (1) he did not receive proper notice of the charges against him and (2) the DHO lacked an evidentiary basis for finding that he violated code 222.

### A.     The BOP Disciplinary Process

The BOP outlines its disciplinary process in the Code of Federal Regulations, Title 28, §§ 541.10–541.23. (*See* Doc. 5 at 7.)  These regulations

3

dictate the manner in which disciplinary action may be taken if BOP staff have reason to believe that an inmate has committed a prohibited act. (*Id.*) Where an inmate raises such suspicion, the Code first requires staff to file an incident report and conduct an investigation pursuant to 28 C.F.R. § 541.14. After the investigation, staff must refer the incident to the UDC for an initial hearing. 28 C.F.R. § 541.15. Once referred to the UDC, the UDC may reach a finding regarding whether the inmate committed the prohibited act or may refer the case to the DHO for a further hearing. 28 C.F.R. § 541.15(f). The Code empowers the DHO to dismiss any charge, to find that the inmate committed the prohibited act, and to impose any available sanction for the act. 28 C.F.R. § 541.18.

    The Code, however, mandates that the DHO conduct the hearing in accordance with specific procedures. *See* 28 C.F.R. § 541.17. Specifically, the regulations require that the warden of the institution give the accused inmate written notice of the charges no less than twenty-four hours before the DHO hearing. 28 C.F.R. § 541.17(a). The warden must, additionally, provide the inmate with a full time staff member to represent him or her at the DHO hearing. 28 C.F.R. 541.17(b). At the DHO hearing, the inmate has a right to make a statement and present documentary evidence and to submit names of requested witnesses, whom may testify or present documents. 28 C.F.R. § 541.1(c). In addition, the Code requires the DHO to call witnesses who have information directly relevant to the charges, if they are reasonably available. *Id.* The DHO must consider all evidence presented at the hearing, and any decision he or she makes must be based on at least some facts. 28 C.F.R. § 541.17(f). If conflicting evidence is presented, the DHO must make a decision based on the greater weight of evidence. *Id.* Finally, the DHO must

prepare a record of the proceedings that sufficiently documents (i) that the BOP advised the inmate of his rights, (ii) the DHO's findings, and (iii) the specific evidence relied on by the DHO in reaching a decision.  28 C.F.R. § 541.17(g).  The record must also include a brief statement of the reasons for the sanction imposed.  *Id.*  The BOP must deliver a copy of this record to the inmate within ten days of the DHO's decision.  *Id.*

### B.     Due Process Standard

While neither party disputes the constitutionality of the BOP disciplinary hearing procedures, the court must, nonetheless, scrutinize the application of the procedures to Barber.  The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV.  In defining the contours of the Due Process Clause, the Supreme Court has mandated that when reviewing a correctional institution's disciplinary proceedings courts must carefully evaluate the process afforded an accused inmate to ensure that institution staff and officials have not violated the Constitution.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime.  There is no iron curtain drawn between the Constitution and the prisons of this country.")

Indeed, the Supreme Court has outlined the following basic procedures, which correctional institutions must follow when conducting a disciplinary proceeding that implicates a liberty or property interest: (1) the inmate must receive at least twenty-four hours written notice of the alleged violations; (2) the institution

must provide a written statement of the fact-finder as to the evidence relied on and the reasons for the disciplinary action taken; (3) the inmate must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (4) the inmate must be allowed to seek the aid of a fellow inmate or from a staff member; and (5) the disciplinary hearings must be impartial. *Id.* at 564–67.

### C. **Process Afforded Barber**

Barber challenges the constitutionality of (1) the notice afforded by the BOP and (2) the evidence used by the DHO in finding Barber guilty of violating code 222. The court will review each of these claims in turn.

#### 1. **Notice**

Barber alleges that he did not receive adequate notice of the charges against him because the BOP "fail[ed] to describe the disposition of the evidence that Barber is alleged of having" and "exclude[d] the full disposition of the suspected liquid, test information, etc." (Doc. 2 at 8.) As a general rule, an inmate must receive written notice of claimed violations at least twenty-four hours prior to a disciplinary hearing. *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). A notice containing information concerning the charges against the inmate and their underlying factual basis satisfies this standard. *Edwards v. White*, 501 F. Supp. 8, 10 (M.D. Pa. 1979); *see also Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994) (finding due process notice requirement satisfied where inmate "clearly was aware of the precise nature and basis for the charges against him").

The court disagrees with Barber's argument. As an initial matter, neither party disputes that the BOP provided Barber with an incident report

describing the exact nature of the charges against him, notice of the discipline hearing several days prior to the hearing, and a form that detailed Barber's rights with regard to the incident report and hearing.  Barber's suggestion that the BOP's failure to provide him with testing records or access to the alcoholic substance prior to the hearing contradicts the actual notice requirement in the context of prison disciplinary proceedings, which does not mandate that an inmate accused of a disciplinary violation receives all the protections that a criminal defendant might receive.  *Wolff*, 418 U.S. at 556 ("[P]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *cf. Morrissey v. Brewer*, 408 U.S. 471, 478 (1972) ("[T]he full panoply of rights due a defendant in such a proceeding does not apply to parole revocations").  *See also Griffin*, 969 F.2d at 21 (holding that failure to preserve alcoholic beverages for evidence at a prison disciplinary hearing does not violate due process because preservation of "the large quantity of beverages regularly seized at the institution would be unsafe and disruptive to institutional order").

### 2.  <u>Sufficiency of Evidence</u>

Barber, in challenging the sufficiency of the evidence relied on by the DHO, argues that "the DHO findings lacked reliability because there is no mention in the record of testing information (type of testing equipment used at the time of the test) . . . ."  (Doc. 2 at 7.)  It is well-settled that in the context of a disciplinary proceeding, the Due Process Clause demands only that the DHO support his or her finding with "some evidence."  *Superintendent v. Hill*, 472 U.S. 445, 457 (1985);

*Elkin v. Fauver*, 969 F.2d 48, 51 (3d Cir. 1992).  As the Supreme Court has explained:

> Ascertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Hill*, 472 U.S. at 445.  Under this deferential standard, once a reviewing court determines that "some evidence" supported the DHO's finding, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO.  *See, e.g.*, *Griffin v. Spratt*, 969 F.2d 16, 22 (3d Cir. 1992).

The evidence presented at Barber's disciplinary hearing undermines any suggestion that the DHO lacked a basis for finding Barber guilty of the violation.  The BOP resolved any doubts regarding this conclusion during the hearing which this court held on December 17, 2008.  During that hearing the following persons testified: Barber; David Bebow, former captain of FCI Schuylkill; and James Tomlinson, special investigative support technician at FCI Schuylkill.

During the hearing, Barber testified that the liquid present in his cell was apple cider vinegar, which he obtained from one of the cooks at the prison.  The apple cider vinegar was poured from a one gallon jug into a root beer soda bottle.

Bebow, at the time of the incident, was in charge of oversight for security, which included alcohol testing.  He identified Government Exhibit 2, the operator's manual for the Alco-Sensor III, the machine used for testing the presence of alcohol.  Bebow testified that a certain percentage of inmates are tested monthly.  All community inmates are tested every time they enter the prison from outside deployment.  Training on the use of the Alco-Sensor III is done monthly for all

lieutenants and annually for all staff.  Bebow also testified that calibration of the Alco-Sensor III is done monthly and entered into a log book.  The log book, (Dfndts. ex. 1 from December 17, 2008 Hearing), applicable to this case was opened on July 25, 2005 and closed on June 4, 2008.  It shows that Alco-Sensor III # 1068141—the exact machine used to test the liquid discovered in Barber's locker—was calibrated on March 1, 2007, April 2, 2007, May 1, 2007, June 1, 2007, and July 2, 2007.  The test of the fluid found in Barber's cell was performed on July 19, 2007, and the liquid was found to contain .091 alcohol.

      Tomlinson testified as to the operation of the Alco-Sensor III and the procedure for the calibration of the machine.  The procedure follows the Operator's Manual at page 25.  (Dfndts. ex. 2 from December 17, 2008 Hearing).  Tomlinson further testified that FCI Schuylkill does not stock apple cider vinegar because of the relationship between apple cider vinegar and alcohol.

      Based on the foregoing uncontroverted evidence, this court is satisfied that Respondent has met the "some evidence" standard to support the DHO's finding.  Accordingly, the court will deny Barber's petition for writ of habeas corpus.

**III.     Conclusion**

  For the reasons set forth above, the court will deny Barber's petition for writ of habeas corpus. An appropriate order follows.

                s/Sylvia H. Rambo
                SYLVIA H. RAMBO
                United States District Judge

Dated: December 19, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD BARBER,** | : | **CIVIL NO. 1:CV-08-1371** |
| Petitioner | : | |
| | : | **JUDGE SYLVIA H. RAMBO** |
| v. | : | |
| **WARDEN JERRY MARTINEZ** | : | |
| Respondent | : | |

## **O R D E R**

**AND NOW**, this 19th day of December, 2008, in accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

3) There is no basis for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c).

                                                                  s/Sylvia H. Rambo
                                                                   SYLVIA H. RAMBO
                                                                   United States District Judge

Dated:  December 19, 2008.